UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARK ADIN MASTERS,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,[1]

Defendant.

No. CV-12-5077-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF Nos. 17, 19. Attorney David L. Lybbert represents Plaintiff; Special Assistant United States Attorney Richard M. Rodriguez represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

On February 20, 2009, Plaintiff filed a Title II application for a period of

---

[1]As of February 14, 2013, Carolyn W. Colvin succeeded Michael J. Astrue as Acting Commissioner of Social Security. Pursuant to FED.R.CIV.P. 25(d), Commissioner Carolyn W. Colvin is substituted as the Defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405(g).

disability and disability insurance benefits, along with a Title XVI application for supplemental security income, both alleging disability beginning August 1, 2004. Tr. 19; 204. Plaintiff reported that he could not work due to "chronic back pain damage to vertebrae and discs," carpal tunnel syndrome in his right and left arms, depression, anxiety, knee problems, foot problems, nerve damage in his arms, and Hepatitis C. Tr. 181. Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). Tr. 82-138. A hearing was held on January 27, 2011, at which vocational expert K. Diane Kramer, medical expert Thomas McKnight, Ph.D., medical expert Richard Hutson, M.D., and Plaintiff, who was represented by counsel, testified. Tr. 34-81. ALJ Marie Palachuk presided. Tr. 36. The ALJ denied benefits on April 19, 2011. Tr. 19-29. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and, thus, they are only briefly summarized here. At the time of the hearing, Plaintiff was 50 years old, divorced, living in a travel trailer in Kennewick, Washington. Tr. 55; 172. He fathered a 9 year-old child, who lives in Pasco, Washington. Tr. 54. Plaintiff dropped out of school in the 9th grade, and later earned a GED. Tr. 55.

Plaintiff's past work includes groundskeeper at a trailer park, a construction worker, forklift mechanic, brake technician, warehouse worker, and siding installer. Tr. 55; 76. His most recent job was in 2008, as a groundskeeper, and he was fired after he had a confrontation with one of the tenants. Tr. 57.

Plaintiff has not worked since 2008, and he said he has "constant dull pain" in his back, sudden twists cause sharp pain, and about twice per year he "throws" his back out "entirely." Tr. 63. He also said he has lost strength in his hands and he occasionally loses his grip. Tr. 62. Plaintiff testified that he is anxious and depressed, he feels lethargic, he does not want to be around people, and he dwells

on his mother's death. Tr. 64. He said he is easily distracted, has difficulty remembering things, and he occasionally experiences vertigo. Tr. 66-67; 71. Plaintiff said he has to take breaks to rest while doing household chores such as washing dishes, laundry, vacuuming, and sweeping. Tr. 67.

Plaintiff said he had a "drinking problem" in 2005, after his divorce. Tr. 65. He admitted he had two DUIs and as a result, he lost his driver's license. Tr. 72. Plaintiff said alcohol was a problem until 2008, but the last time he drank alcohol was December, 2009. Tr. 65-66. He said that between August 2008 and December 2009, he drank moderately and smoked marijuana about once per month. Tr. 66.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales, 402 U.S. 389, 401 (1971).* If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes.

*McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 1, 2008, the amended onset date.[2] Tr. 21. At step two, the ALJ found Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine, status post bilateral cubital tunnel release, status post bilateral carpal tunnel release, and mood disorder secondary to medical condition. Tr. 21. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments. Tr. 23. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform a narrow range" of light work:

> Specifically, the claimant can lift 20 pounds occasionally and 10 pounds frequently. He can stand, walk and/or sit for approximately 6 hours in an 8-hour workday. He can frequently balance, stoop, crouch, and kneel, but can only occasionally climb stairs and crawl. He should never climb ladders, ropes, or scaffolds. He can occasionally reach overhead with the right upper extremity, but he can frequently reach overhead with the left upper extremity. He can occasionally handle, finger, and feel with the right upper extremity, but can frequently do so with the left upper extremity. He should avoid concentrated exposure to extreme temperatures, vibrations, unprotected heights, and moving machinery. He can carry out complex multistep tasks, but his contact with the public and co-workers should be limited to only basic, superficial contact.

Tr. 23-24.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 28. At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as

---

[2]During the Administrative hearing, Plaintiff amended his onset date to August 1, 2008. Tr. 38.

survey worker, mail clerk, and sorter. Tr. 28-29. The ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 29.

**ISSUES**

Plaintiff contends the ALJ erred by: (1) finding Plaintiff's testimony about the severity of his symptoms was not credible; (2) improperly weighing the medical evidence; and (3) failing to provide a complete hypothetical to the vocational expert.[3] ECF No. 18 at 12-18.

**DISCUSSION**

**A. Credibility**

Plaintiff contends that the ALJ erred by relying exclusively upon the absence of supporting objective medical evidence in determining Plaintiff's credibility. ECF No. 18 at 15. The ALJ is responsible for determining credibility. *Andrews*, 53 F.3d at 1039. Unless affirmative evidence indicates malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), quoting *Lester*, 81 F.3d at 834.

To determine whether the claimant's testimony regarding the severity of the symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques

---

[3]Plaintiff's brief lists four issues for the court's consideration. Plaintiff's first issue is an argument that the ALJ erred in the credibility determination by relying solely upon a lack of objective medical evidence to support Plaintiff's claim. ECF No. 18 at 12-14. In this opinion, Plaintiff's first argument is addressed in the credibility analysis under section (1)(a) titled "Objective Medical Evidence."

of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *See, e.g., Fair v. Bowen, 885 F.2d 597, 602-04 (9th Cir. 1989)*; *See Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).

In this case, the ALJ stated that Plaintiff's assertions about the intensity, persistence and limiting effects of his symptoms are not credible, and concluded: "[c]laimant's credibility is undercut by his inconstant reporting of drug use and work activity as is explained thoroughly below." Tr. 24. The ALJ's decision briefly addresses credibility, but the analysis of the medical evidence is interspersed with observations related to Plaintiff's credibility. Tr. 25-27.

**1. Objective Medical Evidence**

An ALJ may not discredit a Plaintiff's testimony about the severity of symptoms based solely on the conclusion that the assertions are unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48. However, conflicts between a Plaintiff's testimony of subjective complaints and the objective medical evidence in the record can constitute specific and substantial reasons that undermine credibility. *Morgan*, 169 F.3d at 600. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by

objective medical evidence").

In this case, the ALJ concluded that the "objective medical evidence … cannot be fully reconciled with the level of pain and limiting effects of the impairments that the claimant has alleged." Tr. 25. Contrary to Plaintiff's contention, the lack of objective medical evidence was only one of the factors the ALJ relied upon in determining credibility. Plaintiff's confusion is understandable in light of the unusual structure of the ALJ opinion that includes the credibility analysis within medical opinion analysis. Tr. 25-27. Because the ALJ did not rely solely upon this ground, citing the lack of objective medical evidence supporting Plaintiff's claims about the severity of his symptoms was not error.

**2. Inconsistent Reporting of Alcohol Use**

Inconsistent statements regarding alcohol use is a proper factor to consider in determining a Plaintiff's credibility. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ properly relied on inconsistent statements regarding the claimant's drinking as a basis to reject his testimony).

In discussing the medical evidence, the ALJ noted that Plaintiff denied the use of street drugs or alcohol when he was examined by a cardiologist. Tr. 25. Additionally, the ALJ discredited a November 2008 DSHS evaluation because during the exam Plaintiff denied alcohol use, but the ALJ recalled Plaintiff's testimony at the administrative hearing as admitting he was "drinking consistently during that period." Tr. 27. The ALJ concluded, "[a]gain, claimant's misinformation regarding his substance use to his examiner is another example of him providing inconsistent and inaccurate information to an examining medical source[] which undercuts his credibility." Tr. 27.

The evidence is unclear about the frequency of Plaintiff's drinking in 2008. At the administrative hearing, Plaintiff testified that alcohol was a problem for him until around 2008. Tr. 65. Plaintiff explained that between August 2008 and December 2009, he was drinking a "moderate amount. I think on a couple of

occasions I drank." Tr. 66.

The record reveals a June 26, 2009, chart note indicating that Plaintiff denied alcohol use to Iyad Jamaili, M.D., a cardiologist. Tr. 461. Eleven days later, Plaintiff admitted to a different provider, Robert Davidson, M.S.W., that he had "relapsed and drank alcohol a couple of weeks ago and was binge drinking for 3 days." Tr. 495.

The evidence does not support the ALJ's characterization that Plaintiff "drank consistently" during the time period surrounding the November 4, 2008, DSHS Psychological/Psychiatric Evaluation. Tr. 27; 264-65. Notwithstanding the ALJ's mischaracterization, the evidence reveals that Plaintiff denied using alcohol in late June 2009, and less than two weeks later he admitted he had been drinking during that time frame. As a result, the record supports the ALJ's conclusion that Plaintiff was inconsistent in reporting his alcohol use.

**3. Unreported work**

Failure to disclose post-onset work provides substantial evidence to support a finding of diminished credibility. See 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

The ALJ noted that Plaintiff described an incident in 2009 related to anxiety that occurred at Plaintiff's workplace, yet Plaintiff reported no earnings during that period and did not disclose a corresponding job on his work history or during the hearing. Tr. 26. The ALJ concluded, "these types of inconsistencies in the record tend to undercut claimant's reliability/credibility in any self-reported information." Tr. 26.

The record reveals that during the course of an examination related to an anxiety attack, Plaintiff referenced that he had been working. During an April 17, 2009, exam by Greg Klinger, PA-C, Mr. Klinger noted that Plaintiff described an anxiety-related episode "several months ago where the patient was at his work …

the patient's co-worker asked if he should call an ambulance ...." Tr. 452. This is the sole reference in the record to Plaintiff's working past his two-month job in 2008. As the ALJ noted, no job in 2009 is reflected on Plaintiff's certified earnings record or in his application paperwork. Tr. 165; 182.

The record is not perfectly clear, but this notation gives rise to an inference that Plaintiff worked sometime after August 2008, and "a few months" prior to April 17, 2009. Tr. 452. An ALJ may draw inferences "logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). As a result, the evidence can be viewed as supporting this factor in the ALJ's credibility determination. Because the ALJ relied upon proper "clear and convincing" factors that were supported by substantial evidence in the record, the ALJ's credibility determination was not error.

**B. Medical Evidence**

The Plaintiff argues that the ALJ erred in weighing the medical evidence. ECF No. 18 at 15-16. As the Defendant points out, Plaintiff's argument related to this issue lacks detailed legal analysis.[4] ECF No. 20 at 14. The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief. *See Carmickle*, 533 F.3d at n.2. However, after a careful review of Plaintiff's brief, it appears Plaintiff intended to raise the issue that the ALJ improperly rejected the opinion of Jan Kouzes, Ed.D. ECF No. 18 at 10.

The ALJ "discredit[ed]" Dr. Kouzes' assessment that Plaintiff had several

---

[4]In Plaintiff's argument section of his brief, a single sentence of legal analysis is provided related to the medical evidence issue: "The Administrative Law Judge has not provided adequate reasoning to support her decision to disregard the medical information in the file regarding as [sic] the claimant['']s functional capacities." ECF No. 18 at 16.

marked limitations. Tr. 27. The ALJ concluded that Dr. Kouzes' assessment was internally inconsistent with the exam and was based on misinformation that Plaintiff had stopped drinking alcohol. Tr. 27. Also, the ALJ stated that Dr. Kouzes "had no description of cognitive limits during the actual evaluation and testing, yet he listed moderate to marked limitations in cognitive areas in the check mark portion of the evaluation." Tr. 27.

On November 4, 2008, Jan Kouzes, Ed.D., completed a Psychological/ Psychiatric Evaluation. Tr. 262-65. Dr. Kouzes assessed Plaintiff with marked functional limitations in the abilities to (1) exercise judgment and make decisions, and (2) relate appropriately to coworkers and supervisors. Tr. 264. Dr. Kouzes also assessed Plaintiff with several moderate social limitations including the ability to interact appropriately in public contacts, respond appropriately to and tolerate the pressure and expectations of a normal work setting, to care for self, including personal hygiene and appearance, and in the ability to control physical or motor movements and maintain appropriate behavior. Tr. 264.

First, the ALJ found that the opinions expressed in the evaluation were internally inconsistent with the exam findings. Tr. 27. The ALJ provided no explanation, or examples to support this conclusion, and a review of the evaluation does not support the ALJ's assertion. Dr. Kouzes' handwritten narratives do not contradict the ratings in the checked boxes. Tr. 264. Dr. Kouzes' handwritten notes during the exam reflect observations about Plaintiff as well as his responses. For example, Dr. Kouzes noted Plaintiff's mood was cooperative but irritable, his mental activity content was depressed, and he reported he has no friends, does not belong to any groups, does not attend church and no longer is interested in his former hobbies. Tr. 266-67. The record does not support the ALJ's conclusion that Dr. Kouzes' exam findings were inconsistent with the boxes checked on the evaluation form.

Next, the ALJ found that the evaluation was entitled to no weight because it

was "based on misinformation" that Plaintiff had stopped drinking alcohol. Tr. 27. As discussed above, the ALJ mischaracterized Plaintiff's testimony that he was "drinking consistently" in 2008, and the evidence is not clear about the frequency of his drinking in 2008. Moreover, the evaluation reflects in several places that Dr. Kouzes was aware of Plaintiff's historical problems with alcohol. For example, Dr. Kouzes noted alcohol or drug abuse was indicated, Plaintiff minimized the connection between alcohol and his depression, and Dr. Kouzes recommended relapse prevention and peer group therapy. Tr. 263-65. However, because Plaintiff told Dr. Kouzes that he had quit drinking altogether, which was untrue, the ALJ's conclusion was reasonable that Dr. Kouzes may have evaluated Plaintiff's impairments differently if he had accurate information about Plaintiff's alcohol use. As a result, the ALJ's discounting Dr. Kouzes opinion because the doctor had inaccurate information is supported by substantial evidence in the record.

Finally, the ALJ asserted that the evaluation reflected "no description of cognitive limits during the actual evaluation and testing, yet he listed moderate to marked limitations in cognitive areas in the check mark portion of the evaluation." Tr. 27. Relevant factors in evaluating a medical opinion are the amount of evidence supporting the opinion and the quality of the explanation provided in the opinion. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Dr. Kouzes examined Plaintiff and administered a diagnostic mental status exam, but did not provide a separate narrative description other than the few sentences on the evaluation form. Tr. 264-67. The lack of supporting evidence in the form of notes or narrative description related to Plaintiff's cognitive functioning is a proper consideration in determining the weight to give to Dr. Kouzes' opinion, and the ALJ did not err in considering this factor. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also 20 CFR 404.1527(b)(2).

One of the three reasons provided by the ALJ for rejecting Dr. Kouzes' opinion is not supported by the record. Harmless error exists where it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. SSA*, 466 F.3d 880, 885 (9th Cir. 2006) (citing *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The court may not reverse the ALJ's decision if the error was harmless. *Batson*, 359 F.3d at 1197 (error harmless where error does not "negate the validity of the ALJ's ultimate conclusion").

In this case, the single error in analyzing the medical opinion is inconsequential to the ultimate nondisability decision. The ALJ's remaining reasons for giving little weight to Dr. Kouzes' opinion were specific and legitimate and supported by substantial evidence in the record and, thus, the error was harmless.

Moreover, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support a medical source's opinion, the ALJ may reject that opinion. *Batson*, 359 F.3d at 1195. The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008), citing *Andrews*, 53 F.3d at 1039-40 (ALJ is responsible for resolving conflicts in medical testimony and ambiguities).

Several medical records indicate Plaintiff can sustain work. For example, Dr. Hutson, an orthopedic surgeon, testified Plaintiff does not meet the Listing for degenerative disc disease, and he endorsed the June 5, 2009, physical assessment that indicated a sedentary work limitation was too restrictive and not supported by the objective medical evidence. Tr. 42-43; 448-49.

Similarly, the record reveals an absence of medical evidence that indicates Plaintiff is incapable of working due to mental impairments. The testifying

medical expert Dr. McKnight opined that Plaintiff has "mild anxiety, depression secondary to mild, possibly moderate orthopedic issues …." Tr. 50. Dr. McKnight noted that "substance abuse is certainly a contributing factor here." Tr. 50. Dr. McKnight concluded that Plaintiff's mental impairment does not satisfy the diagnostic criteria to meet any Listings. Tr. 50-51.

If the ALJ's decision is supported by the reasonable inferences from the record and evidence exists that supports more than one rational interpretation, the court must affirm the ALJ's decision. *See Batson*, 359 F.3d at 1193. In other words, the court may not substitute its judgment for the judgment of the ALJ. *See Batson*, 359 F.3d at 1196.

In sum, the ALJ's error in rejecting the opinion of Dr. Kouzes by relying upon a single reason that was not supported by the record does not negate the validity of the ALJ's ultimate conclusion that Plaintiff was not disabled and therefore is harmless error.

**C. Hypothetical**

The Plaintiff argues that the ALJ erred by relying upon the Vocational Expert's testimony because the ALJ allegedly posed an incomplete hypothetical based on an inaccurate RFC assessment. ECF No. 18 at 16. Specifically, the Plaintiff contends that the hypothetical was deficient because it failed to include all of Plaintiff's limitations. ECF No. 18 at 17.

The hypothetical that ultimately served as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* (citation and quotation marks omitted). However, the ALJ "is free to accept or reject restrictions in a

hypothetical question that are not supported by substantial evidence ." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir.2006).

Furthermore, as the Ninth Circuit has observed, an ALJ may synthesize and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to the vocational expert) without repeating each functional limitation verbatim in the RFC assessment or hypothetical. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured restrictions related to concentration, persistence, or pace, because the assessment was consistent with the medical evidence). A claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson*, 539 F.3d at 1175-76.

The limitations omitted from the hypothetical in this case were identified in opinions that were properly discounted by the ALJ. Plaintiff fails to articulate an argument, and instead provides record cites without analysis. ECF No. 18 at 16-17, citing Tr. 382;[5] 477-83;[6] 452;[7] and 526.[8] The cited records do not support

---

[5]Heather L. Phipps, D.O. record from March 30, 2009, indicating MRI revealed “some arthritis impingement” and treatment plan is anti-inflammatory medicine and exercise.

[6]Chart notes from Kadlec Clinic, noting diagnosis of Hepatitis C and the November 11, 2010, MRI of the lumbar spine results as “similar to his previous lumbar spine MRI which is dated 5/5/2004.”

[7]Chart note from Greg Klinger, PA-C, dated April 17, 2009, noting Plaintiff’s episodic anxiety attack at unreported workplace.

[8]December 10, 2010, chest CT scan revealing thoracic spondylosis and “mild diffuse centrilobular emphysema.”

Plaintiff's argument that the hypothetical was flawed. Accordingly, the proposed hypothetical was not deficient, and the ALJ properly relied upon the vocational expert testimony.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly,

**IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 19,** is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (**ECF No. 17**) is **DENIED**.

**IT IS SO ORDERED**. The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED December 19, 2013.




JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE